# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.B. and A.Y.**

**No. 19-1101** (Roane County 19-JA-10 and 19-JA-28)

**FILED**

**June 25, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.B., by counsel Erica Brannon Gunn, appeals the Circuit Court of Roane County's September 11, 2019, order terminating her parental rights to A.B. and A.Y.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Ryan M. Ruth, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by denying her request for an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2019, the DHHR filed an abuse and neglect petition against petitioner based upon her drug use and its effect on her ability to safely parent A.B.[2] The petition alleged that petitioner's home was unsafe and unsanitary and that petitioner and the child were living with her father, who had been previously convicted of multiple counts of child neglect creating risk of injury and whose parental rights had been previously terminated. The DHHR also alleged that prior to the filing of the petition, petitioner admitted to using both methamphetamine and heroin.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]A.B. was the only child that was named in the initial petition.

1

Finally, the petition alleged that she tested positive for methamphetamine just four days before the petition was filed. Thereafter, petitioner waived her preliminary hearing.

In February of 2019, the circuit court held an adjudicatory hearing wherein a DHHR caseworker testified to the allegations in the petition, including that petitioner admitted to using methamphetamine and heroin and that she tested positive for methamphetamine just prior to the petition's filing.[3] The caseworker also testified that petitioner's home was unsafe, especially considering her decision to live with her father and grandparents, all of whom had been convicted of child neglect creating a risk of injury. After the presentation of evidence, the circuit court adjudicated petitioner as an abusing and neglecting parent based upon her drug abuse and its negative impact on her ability to safely parent her child.

Following her adjudication, the DHHR alleged that petitioner failed to fully participate in the case and filed a motion to terminate her parental rights in April of 2019. Specifically, the DHHR filed a case plan indicating that petitioner was admitted to an inpatient drug treatment program and voluntarily left approximately a month later, saying "she would handle things her way" and that "recovery was not for her." The case plan further stated that the treatment program manager described petitioner as "immature in her recovery and hard to reach." Finally, the case plan indicated that petitioner also failed to begin parenting or life skills classes. As such, the DHHR alleged that there was no reasonable likelihood that petitioner would participate in an improvement period or substantially correct the conditions of abuse and neglect. Later that month, the DHHR filed an amended petition that included petitioner's older child, A.Y.

In May of 2019, the circuit court held an adjudicatory hearing regarding A.Y. At the hearing, the circuit court adjudicated petitioner as an abusing and neglectful parent given that "her substance abuse was such that it impaired her ability to parent to such a degree as to pose a risk" to the child.

The circuit court held a hearing in July of 2019 wherein petitioner testified that she had successfully entered a new inpatient drug treatment program and moved for an improvement period. At the conclusion of the hearing, the DHHR withdrew its motion to terminate petitioner's parental rights, and the circuit court remarked that petitioner was "on the right track" and that her new program was an "opportunity to do what needs to be done to get your child back." The circuit court then directed the parties to develop a case plan.

In August of 2019, the circuit court learned that petitioner failed to complete her inpatient drug treatment program, denied her motion for an improvement period, and suspended her visitation with the children due to noncompliance. Later that month, the DHHR renewed its motion for the termination of petitioner's parental rights because of her failure to comply with the inpatient treatment program.

The circuit court held a dispositional hearing in September of 2019 wherein the DHHR moved for petitioner's parental rights to be terminated. At the hearing, petitioner testified and admitted that she had been discharged from three different long-term residential treatment

---

[3]Petitioner did not attend the hearing, but was represented by counsel.

2

programs throughout the proceedings and was discharged twice from one program after a second attempt. Under questioning from the DHHR, petitioner argued that she was unfairly discharged from the programs, that she did not abuse drugs—despite positive screens—and, that she never abused her children. Based on the evidence, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, given that petitioner "demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with the assistance of the [DHHR] as evidenced by her failure to complete [three] separate long-term drug treatment programs and complete lack of insight into the severity of her substance abuse." Additionally, the circuit court found that petitioner was discharged from one of the programs for "threatening other residents, threatening people on the . . . church van, acting out in meetings, refusing to do required household chores, [and] being argumentative with staff." The circuit court further found that petitioner "accept[ed] no responsibility in her discharge from two other long-term residential treatment programs." The circuit court went on to find that petitioner "habitually abused controlled substances to the extent that proper parenting skills have been seriously impaired" and that she had not "responded to or followed through with appropriate treatment which could have improved the capacity for adequate parental functioning." Finally, the circuit court found that petitioner failed to follow through with a reasonable family case plan and that continuation in her home was not in the best interests of the children. Accordingly, the circuit court terminated her parental rights to the children.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in terminating her parental rights without giving her additional time to participate in an improvement period.[5] While petitioner

---

[4]The permanency plan for A.B. is adoption by her current foster family. A.Y.'s father is a nonabusing parent, and the child has achieved permanency in his care.

[5]In support of this assignment of error, petitioner additionally argues that the children's removal from her care was improper because she does not believe the children were in imminent

3

acknowledges that "the court does not have to exhaust all less restrictive alternatives," she argues that she "had enrolled herself in three separate rehab programs in an effort to address the underlying substance abuse issues." Petitioner further argues that although she either left or was kicked out of those same three programs, she still had ample time to participate in substance abuse treatment. In light of this, she argues that she should have been afforded the opportunity to participate in an improvement period. We disagree.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

On appeal, petitioner continues to "contest[] the truthfulness of the allegations made against her," although she accepts that she made "a general admission to substance abuse that impaired her ability to parent." The record shows, however, that at the dispositional hearing petitioner denied any wrongdoing or responsibility after being discharged from multiple inpatient drug treatment programs, denied abusing drugs despite positive screens, and denied abusing her children. As such, given petitioner's failure to acknowledge her drug addiction and how her actions constituted abusive and neglectful behavior, the granting of an improvement period would have been futile. While petitioner argues that nothing precluded the circuit court from granting her an improvement period in this case, there is no evidence that she would have complied with an improvement period, in light of the fact that she failed to comply with the terms of her case plan.[6] Accordingly, we find no error in the circuit court's denial of her motion.

---

danger when removed. We find, however, that petitioner's waiver of her preliminary hearing—the hearing at which she could have appropriately challenged the children's removal—constitutes a waiver of this issue on appeal. Indeed, "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

[6]In support of this assignment of error, petitioner points out that the circuit court erroneously made findings regarding her noncompliance with an improvement period, despite the

In terminating petitioner's parental rights, the circuit court specifically found that petitioner "demonstrated an inadequate capacity to solve the problems of child abuse on her own or with the assistance of the [DHHR]." This is largely because of petitioner's lack of acknowledgment of her problems, and refusal to follow through with a reasonable family case plan or other rehabilitative efforts. Indeed, petitioner still refuses to acknowledge the conditions of abuse and neglect below by asserting on appeal that she did not abuse or neglect the children. Additionally, petitioner failed to successfully follow through with rehabilitative services designed to correct those conditions. Indeed, the circuit court found that this was "evidenced by her failure to complete [three] separate long-term drug treatment programs." While it may be true that petitioner is now attempting to acknowledge struggling with substance abuse and argues she has "maintained her sobriety since the disposition[al] hearing," she previously flatly denied such abuse and claimed she was unfairly discharged from multiple long-term treatment programs, even when confronted with positive drug screens. Indeed, petitioner showed a blatant disregard for rehabilitative services altogether when she threatened other residents, acted out in meetings, refused to participate in chores, and was argumentative with the program staff during at least one of the treatment programs.

Next, petitioner alleges that the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5) (2019)[7]; however, the same evidence set forth above supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children.

With these parameters in mind, the record clearly supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, given her untreated drug addiction and failure to acknowledge her addiction or complete long-term treatment. While it is true that petitioner may be able to undergo some treatment in the future for her substance abuse, such possible improvement was based on pure speculation. Indeed, petitioner denied that she had a substance abuse problem on several occasions and claimed she was unfairly discharged from multiple programs. Despite this, petitioner claims that she should have been granted a less-restrictive disposition because she might eventually be able to correct the conditions of abuse and neglect, but we have previously held that "[c]ourts are not required to exhaust every

---

fact that no such improvement period was granted. For example, the circuit court found that petitioner did not "successfully complete[] her improvement period or even substantially compl[y] with it." While petitioner is correct that the record shows that she was never granted an improvement period, the fact that the circuit court nonetheless made findings that assumed such an improvement period was granted does not entitle petitioner to relief on appeal. While the circuit court was incorrect in regard to the context of petitioner's noncompliance and failure to improve, the fact remains that these findings were based on evidence of petitioner's failure to comply with the terms and conditions of her case plan. As such, any argument predicated upon the circuit court's mistaken representation that an improvement period was granted entitle petitioner to no relief.

[7]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Finally, regarding petitioner's argument that her parental rights to A.Y. should not have been terminated because the child achieved permanency in the care of the nonabusing father, we have previously held that West Virginia Code § 49-4-604 (2019) "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 11, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6